We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Liam C. Brennan presiding. Your honors, the first case on the docket this morning is 2-21-0558, Patrick Pursley, Petitioner Appellee, the State of Illinois Respondent to Bellant, Sam Pobjecki, and Al, Third Party Intervenor Appellants. Arguing for the Appellant, Ms. Kimberly Janssen. Arguing for the Appellee, Ms. Rachel Brady. All right, are both sides ready to proceed? I am. Ms. Janssen, you may do so. Good morning. May it please the court and counsel. So a petition for innocence proceeding is kind of one of those strange legal creatures. You know, we're all used to the criminal standards of proof beyond a reasonable doubt. This kind of flips that on the head. To be entitled to a petition, to a certificate of innocence, the petitioner needed to prove by a preponderance of the evidence that he was in fact innocent of the crime with which he was charged. The standard of review on this presents a little bit of complexity for this court. The easy part is the issue of whether or not it's an abuse of discretion standard of review. I think McIntosh lays that out pretty clearly. The analysis in McIntosh is really pretty spot on. When we're talking about weighing evidence, the preponderance of the evidence standard, that's not a discretionary determination for the court to make. That's an evidentiary determination, a fact-finding determination. So ordinarily with the preponderance of the evidence standard, or burden of proof I should say, the standard of review for this court would be manifest weight of the evidence. Was the trial court's determination consistent with the manifest weight of the evidence? In this case, however, the petition for certificate of innocence was decided entirely on a documentary record. Is that strictly speaking true? I mean, the judge who considered the certificate of innocence was the trial judge who made credibility findings in the course of that hearing, and isn't he persisting in those credibility findings as he considers the record on the certificate of innocence question? It's a great question, Judge, and I've got a couple of answers for that. First, when the intervener at balance wanted to present their own live testimony, Mr. Persley objected and said, you know, it's not fair if we've got some witnesses coming in live, some witnesses coming in on the cold record. You know, this should all be the same in front of the court. So we presented all our evidence at the petition hearing via the documentary evidence, and it's a little unfair for Mr. Persley then to come back and be like, oh, well, you heard some evidence live previously. I guess the second, and then there will be one more response to that, the second part of that is that at the time he's deciding the petition for a certificate of innocence, we have a whole lengthy history in this case spanning multiple years. You know, I have trouble remembering what I ate for breakfast in the morning. To think that a judge, just because he heard testimony at whatever, 10 years ago, five years ago, three years ago, remembers still specifically the demeanor of all those witnesses. You know, maybe he's got a better memory for that kind of thing than I do, but you know, at that span of time, he's not at this hearing in this context taking new evidence in live. He's relying on the record that exists, some of which he heard live, but the vast majority of which he did not hear live. The vast majority of the evidence presented at the retrial was presented by stipulated transcripts from the original trial. So as to all of those stipulated transcripts, it's a cold record no matter what, because Judge Pursley is the trial judge in the post-conviction process and at the retrial. So really that, you know, for purposes of this case, the only meaningful witnesses who testified live at the retrial but not at the original trial would be the new ballistic evidence, ballistic experts that Mr. Pursley produced. And yeah, I agree that the judges determination in this case is based very heavily on his assessment of those experts. And let's talk about those ballistic experts. I mean, really, I think, of course, I'm not telling anybody anything they don't know. This whole case turns on the ballistics expert and the new statute that allowed him to have everything retested. How do you rebut what the defendant had proven through his experts? Well, what he has proven, he hasn't proven innocence through the testimony of those experts. He's kind of knocking down evidence of guilt. So the evidence in the guilt in the original trial and in the retrial was not limited to tying Mr. Pursley to this weapon. We have his confession to Marvin Wendell. We have the confession of Samantha Crabtree as an accomplice. Which has some credibility issues, correct? I believe her recantation has some credibility issues. Her original statement, in my mind, of course, this court will review that itself. Her original statement rings true. The bulk of the record corroborates that initial statement. You know, she testifies or she says in that statement that she's afraid of Mr. Pursley. Her affidavit recanting that statement reiterates that she was afraid of Mr. Pursley. There are inconsistencies all over the alibi evidence, as Judge McGraw candidly noted. And in fact, even Judge McGraw, in weighing the two statements, said he couldn't really see a clear way to decide which of Ms. Crabtree's statements was true or not true. He never actually determined, made a factual determination as to, you know, was her original statement most credible? Was her affidavit recanting that statement the most credible? Was her trial testimony, her testimony at trial, the most credible? None of the three matches up neatly. So we have her testimony. I'm sorry, go ahead. No. Oh, you had a question. Okay. So then we also have Marvin Windham's testimony. And the only thing that they, that Mr. Pursley's counsel has brought out to kind of knock that down is this theory that, and again, this comes up in Samantha Crabtree's affidavit and recantation, that she's somehow having an affair with Mr. Windham and that he therefore made up a story implicating her in a murder because he wanted to have her to himself. That makes zero sense. And he has testified from 1993 all the way up until the present, consistent with that original story that he came over. Mr. Pursley said, yeah, I shot this guy, pulled out the newspaper clippings. See, that's the guy I shot. Notably, nothing in those newspaper clippings indicates that the murder weapon was a nine millimeter handgun. And before Samantha Crabtree was ever even taken into custody, Marvin Windham makes his anonymous phone call to Crime Stoppers, identifying the weapon as a nine millimeter handgun. He says, that's what Patrick Pursley told me. It's never been explained to me. Doesn't it have to be this nine millimeter handgun? Not any nine millimeter? I don't think it has to be. Well, so it doesn't matter that the gun that everyone talks about early on is not the gun that fired the bullets that killed the victim? So the state is not required. Doesn't that sort of cast some non-credibility on these statements when what comes to pass eventually is that that was not the gun? Well, and I think the record's not quite so absolute. I know Judge McGraw was very impressed with these experts. And I appreciate that. And I read the transcripts. They're wonderful witnesses. But it's not an absolute exclusion of this gun as a possible weapon. We have Dan Gunnell's testimony that, you know, from 1993 when this evidence was collected, all the way up until the time that everybody's now retesting it and re-examining it, we don't know what kind of degradation has occurred. We don't know how it's been handled. Weren't your witnesses asked to of anything and they were really unable to point to something and say, well, this wouldn't impact the subsequent testing? What Dan Gunnell explained is that, so, you know, over time, like these impressions, and that's how you make the comparison, is that this is soft, malleable metal. Just because it's easy to impress, it's also easy to kind of rub off some of those impressions. So, you know, you wouldn't be able to identify, well, this or that or the other, this specific impression got rubbed off in the intervening years. But I will note that in his examination, his re-examination, and to be clear, it wasn't a complete re-examination, when he looked at the evidence again in 2013, he saw a lot of similarities, but he didn't believe that they were of sufficient quality to make the conclusive call that he had made in 1993. Now, that lines up perfectly with his testimony that, you know, the quality of the markings on these bullets over 20-some years can change, can degrade. In fact, even Mr. Murdoch, John Murdoch acknowledged that that was a possibility, that there are a variety of things that can cause damage to ballistic material like this. Fingerprints, the moisture, like if you're touching it with your hand, you know, he, a lot of his testimony suggesting he doesn't believe there would have been degradation is based on like, well, if you handle it all correctly, it should be protected, but we don't have any evidence to validate how all this was handled. And in fact, we have Dan Gunnell, when he testified prior to John Murdoch, talking about they used, for mounting it in the electron microscope, or comparison microscope, excuse me, they used a wax mounting media. Did your witnesses analyze it for ejector, extractor, or magazine lip marks? No. I don't believe they did, and those are all marks that can occur without the shell or the cartridge ever being fired from the gun. In fact, Mr. Murdoch testifies at length explaining that these marks aren't really particularly determinative, because, you know, you can change out the magazine, you can eject a bullet from one gun and then put it in a different gun, you know, I don't know, when you're switching out your handguns, I don't know when you do that or how you do that, but he testified that that can be done, and then that can leave ejector marks on a casing that hasn't been fired from a weapon. Let me ask you this, how is it that down below, I'd never argue anything that the Beretta may have been, in fact, the gun that shot? You brought that up the first time on appeal, all of the other times the issue was the Taurus. Isn't that forfeited, and isn't it unfair to Ms. Brady and the defense to have to scramble and try and defend themselves right now on an issue that was never raised down below? Well, so it's, yeah, how I can explain this, so it's another aspect of the argument that we're making, that simply excluding, and if we take the ballistics experts as gospel truth and exclude the Taurus, that's all we've done, is exclude the Taurus. So it's not really a new argument, we're not really arguing that the Beretta definitely is the real murder weapon, I think there's still plenty of evidence in the firearm that doesn't prove innocence. It's not the same as like a fingerprint or blood samples or things like that that are specific to the individual. It's, you know, he could have used any handgun, everyone zeroed in on the Taurus because that's what Sam Parentshi had originally said had been used. Well, isn't that the way you prove your case though, as a prosecutor, or disprove your case as a defense to throw anything against the wall at this level and expect the defense to respond? Is that forfeited? Or should that be forfeited? I don't believe it's forfeited because it's not, again, I'm not arguing that the Beretta is the gun. It's simply an illustration for why excluding the Taurus isn't proof of innocence. It's simply eliminating one piece of physical evidence. But we still have definitive, we've got an accomplice's confession, we've got another witness who testifies that Mr. Pursley confessed to him. We have a third witness who testifies that when they were in jail together, Mr. Pursley asked him to murder Mr. Windham for, you know, for ratting him out. All this direct witness testimony is consistent with guilt. And simply, you know, excluding one particular firearm, even if we accept that that has in fact been done, isn't proof by a preponderance of the evidence that he's innocent. And I realize that, you know, the concept of proving innocence is very foreign to all of us. We're all very accustomed to the standard of, you know, trying to prove guilt beyond a reasonable doubt. I personally find it difficult to wrap my head around the idea of how do you prove innocence by a preponderance of the evidence. But I think to do that, do so you'd either you'd need some sort of physical evidence that absolutely excludes Mr. Pursley. So say you found the, quote unquote, real firearm and it's registered to another person whose fingerprints are all over it and who had, you know, a beef with the murder victim. That would be enough for innocence, actual innocence. If he had established, you know, I guess beyond reasonable doubt or even by a preponderance of the evidence. You're submitting that's what it would take for an actual innocence claim, not what we have here. It takes more than simply showing that the state hasn't proved guilt beyond a reasonable doubt. You know, there's a murky area in between. You might not be proven guilty by a reasonable doubt, but you might also not have proven yourself innocent by a preponderance of the evidence. There's kind of a middle ground in there that a lot of cases can fall into. So, Ms. Jansen, you'll have an opportunity for rebuttal unless Justice Jorgensen has any additional questions. No, none. Justice Shostak. Thank you. All right, Ms. Brady. Good morning, Your Honors, and may it please the Court. My name is Rachel Brady, and I represent Patrick Persley. Your Honors, two of the most qualified experts Judge McGraw had ever seen concluded that the bullets that killed Andrew Asher did not come from Mr. Persley's gun. Ms. Brady, what do you make of the argument of the prosecution that this could not be matched or the bullets could not be matched in the present condition of this weapon? Is this weapon in a different condition than it was so many years ago when it was in fact alleged to have been fired? No, Your Honor. There's no evidence in the record that anything has happened to any of the ballistic evidence in this case that would lead to some sort of mistaken conclusion. To the extent counsel for the intervener said that potentially the firing pin impressions rubbed off, there is zero evidence in the record of anything like that and the experts testified that, I mean, they conducted an exhaustive analysis and made no conclusions that anything had happened to the ballistics evidence. And so the ballistics evidence itself is conclusive evidence in order to, yeah. So in addition to the- Can I ask a question? So let me, I want to go back to where the state ended on this more theoretical question of what is this quantum of proof. If I changed the fact pattern of the trial and you never had gun evidence at all and instead we had a case where we had Ms. Crabtree's testimony and Mr. Wyndham's testimony and then the arguable attempt on the part of the defendant to have somebody take out Mr. Wyndham and a jury found him guilty with that evidence alone, no gun evidence, and I was on a court of review, in all likelihood I would anticipate we would say that the evidence was sufficient. And if the evidence is sufficient with just that testimony and excluding all the gun evidence, how can I say the defense has proven by a preponderance of the evidence his innocence? Your Honor, both of the witnesses who the interveners have discussed have serious credibility problems. And both of their stories are inextricable from- Ms. Crabtree's credibility problem, does it extend to anything other than her invocation of the Fifth Amendment right? Ms. Crabtree testified at trial that she was coerced or gave a false inculpatory statement under oath. So when she got up in the stand in front of the jury, she said, I was under duress when I made this statement. She had criminal charges hanging over her head. She was afraid that she was never going to see her children again. And so she was in a situation where she was highly vulnerable to state pressure. What weight or how did the jury interpret her testimony? Your Honor, it's impossible to view the jury's interpretation of her statement in a vacuum because the jury was presented with bad ballistics evidence. So certainly her statement may have had some weight or not, but in the face of this ballistics evidence, it was impossible for the jury to reach any other conclusion. The state's ballistics- That was Justice Brennan's question. Take away the ballistics evidence. And you have these witnesses and that you have the confession, you have Crabtree, you have the individual who said that he had confessed to him, you have the gentleman in the jail. Now, these are all riddled with credibility issues. Don't get me wrong. But are you saying then in light of the fact that you had bad ballistics evidence, if you didn't have any ballistics evidence, you would not have got guilty with these non-credible witnesses? Is that what you're saying? Did the ballistics lend credibility to their statements, I guess, is a clearer question. Yes. Yes, Your Honor. The state's entire case is built around the ballistics. Marvin Windham, for instance, testified that Patrick Persily showed him this particular Taurus. He was at his house and he said, look, this is the gun that I used to kill the victim. And so when you take away that, and that gun was not the gun that was used to kill the victim, Marvin Windham's statement completely falls apart. There's nothing there on which his statement can be based. And that's not to mention all of the other reasons that make Marvin Windham's statement unreliable, and that he was facing charges himself. He had a lengthy criminal history, he had personal beef with Patrick Persily, he was having an affair with Samantha Cratchery, and there are a lot of credibility problems. And so when you take those witnesses with their credibility problems, and then you add in this highly exculpatory, objective evidence of innocence, that is sufficient for Mr. Persily to meet his burden. So I also think it's important to recognize what exactly the interveners are asking the court to do in order to find for them. So first, what they're asking is to apply a de novo standard of review, which there is no legal support for. And then on top of that de novo standard, they're asking this court to deny the certificate of innocence based on a brand new theory of guilt that was never presented to the trier of fact. Now the Illinois Supreme Court does not allow either approach. And so even if it did, all that would do would get this court to the point where it can begin to weigh the evidence. And even then, Mr. Persily has satisfied his burden. So he has presented this powerful, objective science. He also presented evidence of an alibi, a verified declaration of innocence, evidence that from an eyewitness that the shooter didn't match Mr. Persily's description. So there are additional categories showing innocence beyond the ballistics. But really, as Your Honor noted earlier, this case comes down to the ballistics. So the interveners, on the other hand, point to only two witnesses, one of whom recanted, the other of whom the state doesn't even believe anymore, because they refused to present him at Mr. Persily's retrial, both of whom have serious credibility problems, and both of whose stories are demonstrably false. So under any standard of review, Mr. Persily has demonstrated innocence. So to the threshold question of what standard of review applies here, I think it's important to note that the interveners have conceded that if the standard of review is anything other than de novo, they cannot prevail. Their entire argument turns on a de novo review. They put all of their eggs in the de novo basket. So if this court concludes that any deferential standard is warranted as supported by all of the case law, the interveners cannot prevail. The interveners have cited no case that requires or even suggests de novo review in a posture like this, when the trial court made reasonable factual findings based on a deep, long-standing familiarity with the case, including an evaluation of live witness testimony. And to counsel's point that Judge McGraw may have been considering evidence he heard years ago, this certificate of innocence came right on the heels of Mr. Persily's acquittal on retrial. So there was not a 10-year gap when he was trying to think about something that happened back in 1993, when Mr. Persily was first tried. How long did it come after the post-conviction petition? Mr. Persily's first post-conviction hearing was in 2014, and the certificate of innocence was filed in 2019, just weeks after Mr. Persily was acquitted on retrial. And it was during that hearing that Judge McGraw heard the live testimony from these highly, highly qualified ballistics experts. So the interveners have cited no case to support de novo review in a posture like this. Our brief on pages 17 and 18 lists a wide variety of certificate of innocence cases, just like this, where courts have applied some sort of deferential standard, even cases out of this district. This court said in Peeble v. Schiller earlier this year that in the post-conviction context, a court can apply de novo review only if it's a pure question of law, which is not the case here. And the judge has no familiarity with the case, which is also not the case here. So clearly, some sort of deferential standard applies. And it's not necessary for this court to decide. I mean, our position is that it's an abusive discretion standard. That's the one that's typically applied in certificate of innocence cases. But under any deferential standard, the state has effectively conceded that Mr. Persily is entitled to a certificate of innocence. They pointed to nothing arbitrary or fanciful about Judge McGraw's conclusion. Let me ask you this. What have you negated about the statements that were made by Crabtree and Windham? In other words, you've negated the ballistics. But tell me how specifically you have negated those statements. They are what they are. So both of these witnesses provided statements. And when I'm talking about Ms. Crabtree, I'm talking about her, not her trial testimony, because she testified at trial, that this didn't happen. Her statement is that Patrick Persily used his nine millimeter Taurus, the one she bought, that lived in their house with them, and took that weapon to go commit this murder. The ballistics shows that that didn't happen. That weapon was not used. So that statement is false. Any statement that turns on the identity of that weapon is false. Marvin Windham, same thing. So you're saying just because she got the gun wrong, her entire statement false. Is that your position? Yes, Your Honor. But the rest of her statement, we just assume, has no credibility because she got the gun wrong. That's correct, Your Honor. Yes, Your Honor. Her statement turns on that gun. The same thing goes for Marvin Windham. As he said, I was at Patrick Persily's apartment. He took out this nine millimeter Taurus and he said, look at this gun I used this to kill Andrew Asher. And then Marvin Windham got on the stand and he identified that gun. How do we know there weren't two of them? Two guns. So Mr. Windham sees a gun that's never tested, never sees the light of day again. Yes, Your Honor. We do not know that. And my question is, how do we make those assumptions here in order to agree with Judge McGraw? Your Honor, the court doesn't need to make that assumption because the state presented a case at trial that that particular gun was used to kill Patrick Persily. And people against Palmer, the Illinois Supreme Court case, says that the state cannot now rely on a different set of evidence to argue that the certificate of innocence should be prosecuted with gun B. Mr. Windham does not automatically or, excuse me, not specifically or beyond a reasonable doubt, beyond a preponderance, identify the gun he sees during the course of this statement as this Taurus. We keep saying the gun, this Taurus. How do we know? Because you're using that to discount these statements. And yet no one identified a specific gun. I understand. Sorry, I misunderstand Your Honor's question. I mean, I think there's zero evidence on the record of any of this. Marvin Windham said that's the gun. And there's no evidence that Patrick Persily had a different gun. So speculating about whether there was a different gun would run afoul of the Illinois Supreme Court's mandate in people against Palmer. So Windham identifies the gun as the same one he'd seen earlier. Yes, Your Honor. On the stand. So allowing the interveners to say, oh, perhaps it was a different nine millimeter. Perhaps it was a Beretta. I mean, for one, as Your Honor noted earlier, that argument is long forfeited. The interveners didn't argue that in the certificate of innocence proceedings. They cannot now argue that this theory for the first time on appeal. Beyond that, the Illinois Supreme Court has expressly foreclosed this approach. The Illinois Supreme Court has said that innocence is not some sort of metaphysical state impossible to prove. The Illinois, as the interveners are suggesting, the Illinois Supreme Court said that innocence is you need to show that it is more likely than not that you didn't do the thing that the state said you did at trial. And at trial, the state said Mr. Persily used this gun to commit the crime. So we also discount Mr. Windham's testimony and that the defendant said, I killed this person. End of sentence with this gun. Do we also just negate the defendant's confession that he killed the victim regardless of how it was done? Yes, Your Honor. Marvin Windham statement has no value. Even the state doesn't believe Marvin Windham anymore. That's why they didn't present him at at the retrial. And I think it's important to remember that these don't exist in a vacuum. They exist in the context of this highly exculpatory ballistics evidence that conclusively proves that Mr. Persily did not commit the crime that he was prosecuted for. Ms. Brady, your time is up. Do you have anything else very briefly to close out? No, Your Honor. Thank you. Any questions from Justice Jorgensen or Justice Sostek? One, the certificate of innocence. What is what is the purpose behind it? What is how would it benefit your client? Yes, Your Honor. A certificate of innocence has some statutory things about it that benefit people who have been wrong wrongfully convicted. So it entitles the innocence holder to get job benefits, employment coaching, some kind of intangible benefits like that. It also comes with a modest amount of compensation to to compensate the wrongfully convicted person for the time that they spent in prison. But I also think there's significant value in a declaration from a court of law that the person is innocent of the crime as opposed to just not guilty. It will allow Mr. Persily to get his record expunged and all of those kind of continuing terms that have tracked him since his exoneration. Thank you. Thank you, Your Honor. All right. Thank you, Ms. Brady. Ms. Jansen, rebuttal. And I will try to be as brief as I possibly can. Can I ask you to address one thing initially? Why was Mr. Wyndham not called at the second trial? And you know that it is unfortunate that he lost confidence in his credibility. Well, I can't imagine. I can't hold on. I can't imagine a more compelling witness at a second trial. So it intrigues me. I realize there's nothing in the record, but you don't have an explanation. It appears that somebody screwed up and failed to have him properly served with a subpoena and then they couldn't find him. So, yeah, I mean, it's unfortunate. Obviously, it would have been better had he been there. It would have been if the retrial hadn't occurred on stipulated transcripts. I would have loved to have heard Aaron and Anthony, now that they're adults and in less of a vulnerable position, testify again rather than just reread their transcripts. You know, I can't really speak to the decisions that were made in the retrial, but I don't think there's any basis for suggesting that that's somehow this, you know, gotcha that the state concedes that he's not credible. I think personally, I think he's very credible and doesn't really have any kind of motivation to lie. He didn't really say it was this Taurus. He said he showed me a nine millimeter gun and he kind of described it black with a brown handle. And as I understand it, that kind of matches what the Taurus looks like. He never actually in his calls to the Crime Stoppers hotline, never said, you know, he shot the guy with a Taurus. He said he shot the guy with a nine millimeter. There is evidence. It is the defendant's burden to show his actual innocence at this point, at that point, not your burden to prove your case again. Correct. And I've forgotten, I apologize, which judge asked the question that did the new ballistics evidence make a difference in terms of how the the original jury viewed the witness statements? We don't know. But really, that's a question for the post-conviction process. When you're looking at it and you say, oh, well, now we have new ballistics evidence that calls us into question, it might have made a difference. Let's present it to a new jury. Absolutely. When we're trying to decide if it proves his innocence, how the original jury weighed that against the witness statements doesn't tell us anything about whether he's in fact innocent, pardon me. The counsel really repeatedly refers to Judge McGraw's intimate familiarity with this detailed record. But I think we got the concession that we're really limiting it to the testimony at the retrial and then the materials presented at the petition for innocence proceedings. Very little live testimony at that retrial. I think from the time we've spent this morning, it's fairly clear and I'm deeply appreciative that this court is pretty intimately familiar with this record. I spent a lot of time trying to learn all the differences between a breach base and a barrel and a firing pin impression. It's a cold record. There's transcripts. This court is fully capable of reading the same transcripts that Judge McGraw read. And as to the firearm witnesses, the ballistics experts that he did hear live, he actually, in his factual findings at the retrial, disregarded actual testimony from those witnesses. In his findings, finding Mr. Persley not guilty beyond a reasonable doubt, he said, I totally disregard any possibility that the recovered casings could have been damaged or degraded. But John Murdoch admitted on cross-examination that, yes, it's absolutely a possibility. There's no way to know. Depends on how these things have been handled. It depends on who's handling them. Depends on what protocols are being applied. Both of the new ballistics experts acknowledge that there is indication of alterations. Now, we don't know when those scratches and non-manufactured tool marks were introduced to the weapon, but we do know there are non-manufactured tool marks in the barrel on the breach face that could have affected the identification. As for the credibility of the witnesses, particularly with Sam Crabtree, but also with Marvin Windham. Ms. Brady, your time is up. I'd ask, or I apologize, Ms. Jansen, your time is up. I'd ask you to wrap it up. Thank you. Sure. I'm just going to say, I've never once heard what motive Sam Crabtree would have had to lie about Mr. Persley's guilt. And if there are no further questions, then I simply ask that this court reverse the finding of innocence. Thank you, Justice Jorgensen or Justice Shastrick, any additional questions? None, thank you. I have no additional questions. We would like to thank both counsel for insightful arguments. We will take the matter under advisement and render an opinion in due course. Thank you.